## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

---

DANA MITCHELL,                                Case No. 21-CV-0934 (PJS/HB)

       Plaintiff,

v.

THE COUNTY OF RAMSEY, a                               ORDER
Minnesota Municipal Corporation; JOHN
CHOI, in his individual and official
capacity; ROBERT FLETCHER, in his
individual and official capacity,

       Defendants.

---

    Nicholas G. B. May and Lucas J. Kane, FABIAN MAY & ANDERSON, PLLP, for plaintiff.

    Charles G. Frohman, Mary L. Knoblauch, and Brittany B. Skemp, MASLON LLP, for defendants.

    Plaintiff Dana Mitchell is an attorney employed by the Ramsey County Attorney's Office ("RCAO").  She brings this action against defendants Ramsey County ("the County"), Ramsey County Attorney John Choi, and Ramsey County Sheriff Robert Fletcher, alleging violations of her rights under the First Amendment, the Minnesota Whistleblower Act, Minn. Stat. § 181.931, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.15.

    This matter is before the Court on defendants' motion to (1) dismiss Mitchell's First Amendment claims against Choi and Fletcher in their individual capacities;

(2) dismiss Mitchell's First Amendment claim against Fletcher in his official capacity; and (3) strike or redact certain allegations from Mitchell's complaint. For the reasons that follow, the motion is granted in part and denied in part. Specifically, the Court grants the motion as to the individual-capacity claims, grants defendants' request for redaction, and denies the motion in all other respects.[1]

## I. BACKGROUND

Mitchell alleges the following facts relevant to her First Amendment claims:

Mitchell has been employed by the RCAO since 2006. Am. Compl. ¶ 9. Mitchell's duties include providing legal advice to the County and its departments, representing the County in court, and playing an advisory role in investigations of County employees. Am. Compl. ¶¶ 9, 18–19, 31, 42–43. She has also represented the RCAO in interactions with internal and external stakeholders, professional and community organizations, and schools. Am. Compl. ¶ 11. Mitchell's performance reviews have been outstanding, and she has no charges or complaints in her file. Am. Compl. ¶¶ 10, 67.

---

[1]For the reasons explained on the record at the hearing on defendants' motions, the Court denied defendants' motion to strike but granted defendants' alternative request that Mitchell file her proposed amended complaint under seal along with a redacted version. After Mitchell complied with this directive, the parties stipulated that defendants' partial motion to dismiss should be deemed to be directed at Mitchell's amended complaint.

Mitchell is a non-political appointee.  Am. Compl. ¶ 14.  Under Minnesota law, her position is designated as "classified."  *See* Minn. Stat. § 383A.281, subd. 9 (defining classified-service positions as all positions in the county personnel system "not specifically designated as unclassified"); Minn. Stat. § 383A.286, subd. 2(o) (designating "the county attorney, the county attorney's first assistant, one principal assistant, and a personal secretary" as the only unclassified RCAO positions).  As a result, Mitchell is protected from discharge or other adverse action except for just cause and cannot be compelled to make political contributions as a condition of her job.  Minn. Stat. § 383A.294, subd. 1; Minn. Stat. § 383A.297.  A more generally applicable Minnesota statute also prohibits political subdivisions from imposing or enforcing "additional limitations on the political activities of its employees."  Minn. Stat. § 211B.09.

Beginning in April 2015, Mitchell was primarily responsible for advising the County and its departments on employment-law issues.  Am. Compl. ¶ 9.  She is an expert on both employment law and the Minnesota Government Data Practices Act.  Am. Compl. ¶ 9.  Among the departments Mitchell advised was the Ramsey County Sheriff's Office ("Sheriff's Office").  Am. Compl. ¶ 42.

Fletcher was first elected Ramsey County Sheriff in 1994.  After being defeated for reelection in 2010, Fletcher ran again for his former office in 2018.  Am. Compl. ¶¶ 43–44.  Choi campaigned with Fletcher in the months leading up to the election; the

two candidates even campaigned door-to-door together on multiple occasions.  Am.

Compl. ¶ 44.  Mitchell made a campaign donation to Fletcher's opponent, Jack Serier,

who was the Ramsey County Sheriff at the time.  Am. Compl. ¶¶ 45, 50.

Prior to the November 2018 election, Mitchell was involved in several

investigations of misconduct by Fletcher's supporters in the Sheriff's Office.  Am.

Compl. ¶¶ 43, 45–48.  One of the investigations concerned illegal disclosure of

confidential information to Fletcher, some of which he then published on his campaign

website.  Am. Compl. ¶¶ 45, 47.  As a result of these investigations, several of Fletcher's

supporters were disciplined.  Am. Compl. ¶¶ 47–48.

In January 2019, shortly after Fletcher took office, First Assistant County

Attorney John Kelly informed Mitchell that, because she had contributed to Serier's

campaign, Fletcher did not want her to represent the Sheriff's Office.  Am. Compl. ¶ 50.

Kelly told Mitchell that "[t]his is just the way these guys are" and also that Mitchell

"knew where the bodies were buried," which Mitchell interpreted as a reference to her

involvement in the investigations of Fletcher's supporters in the Sheriff's Office.  Am.

Compl. ¶ 50.

The next day, Mitchell emailed Kelly to make clear that she did not want to be

removed from her role with the Sheriff's Office and to complain that she was being

retaliated against because of her contribution to Serier and involvement in the

investigations of Fletcher's supporters.  Am. Compl. ¶ 51.  Mitchell also complained of

this alleged retaliation to another employee in June 2020.  Am. Compl. ¶ 52.  The

following month, Deputy County Manager Scott Williams confirmed to Mitchell that

she had been removed from handling Sheriff's Office matters because she was

"political," which Mitchell interpreted as a reference to her contribution to Serier and

her involvement in the investigations.  Am. Compl. ¶ 53.  Previously, during the

transition between Serier's and Fletcher's administrations, Williams had told another

employee that Fletcher was going to fire Mitchell because she was one of "Jack's

people."  Am. Compl. ¶ 54.  In July 2020, Mitchell sent a letter to the Ramsey County

Board of Commissioners complaining of this retaliation.  Am. Compl. ¶ 72.  No action

was taken in response to any of Mitchell's complaints.  Am. Compl. ¶¶ 51–53, 70.[2]

---

[2]Mitchell's amended complaint alleges that she reported numerous other instances of illegal conduct and experienced retaliation as a result.  In her brief, however, she makes clear that, for purposes of her First Amendment claims, the only protected conduct at issue is her campaign donation to Serier.  *See* ECF No. 31 at 17–18 & n.3.

Mitchell also alleges that, in addition to being removed from her assignment with the Sheriff's Office, she was demoted to the Civil Commitment Unit in retaliation for her campaign donation.  Am. Compl. ¶ 84; ECF No. 31 at 20.  Mitchell withdrew this claim at oral argument, however.  *See* Hr'g Tr. 18, 30–31.  This was wise, as Mitchell has not plausibly alleged a causal connection between her 2018 campaign contribution and her August 2020 reassignment.  *See Charleston v. McCarthy*, 8 F.4th 772, 780 (8th Cir. 2021) ("Without more evidence to support an inference of causation, the length of time between Charleston's 2016 campaign and his 2017 termination is simply insufficient to demonstrate causation.").

## II.  ANALYSIS

### A.  Standard of Review

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ.

P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and

draw all reasonable inferences in the plaintiff's favor.  *Perez v. Does 1–10*, 931 F.3d 641,

646 (8th Cir. 2019).  Although the factual allegations need not be detailed, they must be

sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007).  The complaint must "state a claim to relief that is

plausible on its face."  *Id.* at 570.

### B.  Qualified Immunity

Defendants argue that Mitchell's First Amendment claims against Choi and

Fletcher in their individual capacities should be dismissed because they are entitled to

qualified immunity.  The Court agrees.

Before addressing the issue of qualified immunity, the Court must first be clear

about the nature of Mitchell's First Amendment claims.  Two distinct lines of precedent

have developed concerning the First Amendment rights of public employees.  First,

*Pickering v. Board of Education*, 391 U.S. 563 (1968), and its progeny address the extent to

which public employees are protected from retaliation for their speech and other

expressive activities.  Second, the *Elrod–Branti* line of cases[3] addresses the extent to

which public employees are protected from retaliation for their political beliefs or

activities.  *See Thompson v. Shock*, 852 F.3d 786, 791 (8th Cir. 2017) (discussing the two

lines of cases).

Mitchell analyzes her claim under both lines of precedent, but the Eighth Circuit

has made clear that when an employee suffers an adverse action because of a political

contribution, the *Elrod-Branti* line of cases applies.  *Id.* at 793 ("When the constitutional

right at issue involves joining, working for or contributing to the political party and

candidates of [the employee's] choice, we apply the *Elrod–Branti* test." (citation and

quotation marks omitted)).  The Court therefore applies the *Elrod–Branti* line of cases in

determining whether Choi and Fletcher are entitled to qualified immunity.

"Qualified immunity shields a government official from liability unless his

conduct violates clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir.

2014) (citation and quotation marks omitted).  For a right to be "clearly established," the

existence of the right must be "settled law" that is "dictated by controlling authority or

a robust consensus of cases of persuasive authority."  *District of Columbia v. Wesby*, 138

S. Ct. 577, 589–90 (2018) (cleaned up).  "It is not enough that the rule is suggested by

---

[3] *See Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980).

then-existing precedent.  The precedent must be clear enough that every reasonable

official would interpret it to establish the particular rule the plaintiff seeks to apply."  *Id.*

at 590.  It is also not enough that the right is established at a high level of generality; it

must "clearly prohibit the [official's] conduct in the particular circumstances before

him."  *Id.*  "The dispositive question is whether the violative nature of *particular* conduct

is clearly established."  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (citation and

quotation marks omitted).  Qualified immunity thus protects "all but the plainly

incompetent or those who knowingly violate the law."  *Pollreis v. Marzolf*, 9 F.4th 737,

743 (8th Cir. 2021) (citation and quotation marks omitted).

Under *Elrod* and *Branti*, the First Amendment generally protects government

employees from adverse action due to political patronage—that is, adverse action on

account of the employee's political beliefs or affiliation.  *Heffernan v. City of Paterson*, 136

S. Ct. 1412, 1417 (2016).  There is an exception, however, for "positions for which

political loyalty is necessary to an effective job performance."  *Curtis v. Christian Cnty.*,

963 F.3d 777, 784 (8th Cir. 2020) (citation and quotation marks omitted).  Although

courts commonly speak of these unprotected positions as "confidential" or

"policymaking," the Supreme Court has made clear that "the ultimate inquiry is not

whether the label 'policymaker' or 'confidential' fits a particular position; rather, the

question is whether the hiring authority can demonstrate that party affiliation is an

appropriate requirement for the effective performance of the public office involved."
*Branti*, 445 U.S. at 518.

Nearly all cases that have addressed the issue have held that government
attorneys—with the exception of public defenders—"occupy positions requiring
political loyalty and are not protected from political dismissals under the First
Amendment."  *Aucoin v. Haney*, 306 F.3d 268, 275 (5th Cir. 2002); *see also Biggs v. Best,
Best & Krieger*, 189 F.3d 989, 995 (9th Cir. 1999) ("Many cases have addressed the role of
attorneys in city government, and almost all of them have found such attorneys to be
policymakers subject to patronage discharges."); *Gordon v. Cnty. of Rockland*, 110 F.3d
886, 892 (2d Cir. 1997) (assistant county attorneys subject to political patronage);
*Williams v. City of River Rouge*, 909 F.2d 151, 155 (6th Cir. 1990) ("Although *Branti* left it
to courts to make the case-by-case decision whether a particular government employee
qualified for first amendment protection against politically-motivated dismissal, courts
that have decided whether city and county attorneys are so protected have almost
uniformly found that they are not."); *Ness v. Marshall*, 660 F.2d 517, 522 (3d Cir. 1981)
("as a matter of law, the duties imposed on city solicitors . . . e. g., rendering legal
opinions, drafting ordinances, negotiating contracts define a position for which party
affiliation is an appropriate requirement"); *Newcomb v. Brennan*, 558 F.2d 825, 829–31
(7th Cir. 1977) (deputy city attorney was subject to political patronage); *see also* Susan

Lorde Martin, *A Decade of Branti Decisions: A Government Official's Guide to Patronage Dismissals*, 39 Am. U. L. Rev. 11, 46–47 (1989) ("all circuit court decisions—and almost all other court decisions—involving attorneys in government service, other than public defenders, have held that *Elrod*/*Branti* do not protect those positions").

The Eighth Circuit is no exception.  In *Bauer v. Bosley*, the Eighth Circuit held that the position of staff attorney in a circuit court clerk's office was "exactly the sort of position for which political affiliation is an appropriate requirement for effective performance."  802 F.2d 1058, 1063 (8th Cir. 1986).  In making this determination, the Eighth Circuit relied heavily on the fact that the plaintiff was a lawyer who had an attorney-client relationship with an elected public official.  *Id.*  Indeed, the Eighth Circuit almost seemed to establish a categorical rule that the First Amendment does not protect government attorneys from being dismissed because of their political affiliations: "An attorney should not force his services upon any client or individual in any situation that encompasses an attorney-client relationship or a relationship that commands mutual confidence, fidelity, and compatibility."  *Id.*

Michell argues that *Bauer* and similar cases are distinguishable because, unlike the lawyers in those cases, she is protected under state law from politically motivated retaliation.  She contends that, under *Shockency v. Ramsey County*, 493 F.3d 941 (8th Cir.

2007), this state-law protection means that she does *not* fall within the political-patronage exception to the First Amendment.

In *Shockency*, the plaintiffs were classified employees of the Ramsey County Sheriff's Office. *Id.* at 951. As a result, they were—just like Mitchell—insulated by state statute from discipline based on political affiliation and protected from any requirement that they belong or contribute to any political party. *Id.* Based largely on these facts, the Eighth Circuit affirmed the denial of qualified immunity, concluding that "a reasonable official would not have thought that Moore and Shockency held policymaking positions and could not have reasonably relied on that exception in taking adverse employment actions against them." *Id.*

There is no doubt that *Shockency* helps Mitchell, and it is possible that this Court will eventually conclude—in the context of addressing Mitchell's official-capacity claims—that, under *Shockency*, Mitchell does not come within the political-patronage exception to First Amendment protection. But there is a critical difference between *Shockency* and this case: Unlike the employees in *Shockency*, Mitchell is an attorney. And because Mitchell is an attorney, the Court concludes that an official in the position of Choi or Fletcher could reasonably have concluded that she was not protected under the First Amendment from adverse action on account of her political affiliation.[4]

_____

[4]The Eighth Circuit recently distinguished *Shockency* to find that deputy sheriffs
(continued...)

-11-

"The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity." *Wagener v. McDonald*, 509 N.W.2d 188, 191 (Minn. Ct. App. 1993) (citation and quotations omitted). "If the relationship is to work, the client must confide in the attorney, trusting that the attorney will keep confidences and will ably perform.  If the client loses this confidence, whether justifiably or not, the client must be able, without penalty, to end the relationship." *Nordling v. N. States Power Co.*, 478 N.W.2d 498, 501 (Minn. 1991).

Because of the confidential and fiduciary nature of this relationship, the Rules of Professional Conduct and their commentary provide that a client (such as Fletcher) has the "right to discharge a lawyer at any time, with or without cause" and that a lawyer (such as Mitchell) has a concomitant ethical duty to withdraw from representation when discharged by a client.  Minn. R. Prof. Conduct 1.16(a)(3) & cmt. 4; *In re Disciplinary Action against Samborski*, 644 N.W.2d 402, 406 (Minn. 2002) (imposing

---

[4](...continued)
who may have enjoyed some measure of protection from political reprisal under Missouri state law were nevertheless subject to political patronage. *See Burns v. Cole*, Nos. 20-2961, 20-3284, 2021 WL 5549411, at *3–4 (8th Cir. Nov. 29, 2021).  The court noted that "[w]hether Cole violated Appellants' state statutory political activity rights is an inquiry separate from whether he violated their First Amendment rights" and explained that "our consideration of state law is only for the purpose of determining the description and nature of a government employee's role." *Id.* at *3.  This analysis suggests that, although Mitchell is protected by the same state statutory scheme as the sheriff's office employees in *Shockency*, Mitchell's role as an attorney may nevertheless render *Shockency* distinguishable.

discipline on attorney who, among other things, "disregarded clients' repeated attempts to discharge him, failing to withdraw from the representations" and "even told one client that she could not fire him").  And for the same reasons, the great weight of authority finds that government attorneys fall within the political-patronage exception to the First Amendment.  *See Bauer*, 802 F.2d at 1063.

As noted, Mitchell contends that this authority is distinguishable because attorneys in those cases were not protected from political retaliation by state law.  That is not entirely true, however; the Second Circuit has held that an assistant county attorney did not enjoy protection from political retaliation under the First Amendment even though he did enjoy such protection under state law.  *See Diederich v. Cnty. of Rockland*, 166 F.3d 1200, 1998 WL 887179, at *1 (2d Cir. 1998) (unpublished table disposition) (explaining that "civil service protection is only one factor to be considered in determining whether a public employee is protected by the First Amendment from a political dismissal"); *cf. Biggs*, 189 F.3d at 996 (fact that city attorney was a nonpartisan position did not insulate assistant from political dismissal).  The existence of this precedent—and the fact that, as the Eighth Circuit very recently affirmed, the question of whether political retaliation violates state law "is an inquiry separate from" whether such retaliation violates the First Amendment, *Burns v. Cole*, Nos. 20-2961, 20-3284, 2021

WL 5549411, at *3 (8th Cir. Nov. 29, 2021)—undermine Mitchell's argument that she had a clearly established right to be protected from political patronage.

It is also relevant that, in this case, Mitchell was not discharged. As far as the record reflects, she is working in the same position for the same employer with the same salary and benefits.[5] All that has changed is that, instead of being assigned to provide legal services to the Sheriff's Department, she is instead assigned to provide legal services to other departments. The Court will nevertheless assume (without deciding) that Mitchell suffered an adverse employment action. *Cf. Shockency*, 493 F.3d at 948–49 (discussing whether the plaintiffs suffered adverse employment action, a necessary element of their First Amendment claims). But for purposes of determining whether an official is entitled to qualified immunity, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 577 U.S. at 12 (citation and quotation marks omitted). The parties have not cited—and the Court has not found—a single case squarely holding that a government client (such as Fletcher) violates the First Amendment by refusing to remain in an attorney-client relationship with an attorney who supported the client's political opponent. Moreover,

---

[5]Mitchell generically alleges that "[a]s a direct and proximate result of Defendants' conduct" in violating her First Amendment rights, she suffered "loss of income and benefits." Am. Compl. ¶ 85. She does not, however, specifically allege that her removal from the Sheriff's Office assignment was accompanied by a reduction in pay or loss of benefits.

both Fletcher's request for a new attorney and Choi's compliance with that request were not only limited to, but seem to have been dictated by, their respective rights and duties under Rule 1.16.  For these reasons, the Court finds that an official in the position of Fletcher or Choi could reasonably have concluded that Mitchell did not have a First Amendment right to continue to provide legal services to Fletcher and the department he headed.

As noted, Mitchell relies heavily on *Shockency*.  But *Shockency* did not involve a government attorney and did not have to address how to reconcile Rule 1.16 with the protections against political retaliation afforded by Minnesota law.[6]  As noted, there is authority suggesting that a client's right to discharge an attorney—i.e., a client's right not to be forced to remain in a fiduciary relationship with an attorney in whom he does not have trust or confidence—"trumps" that attorney's right under state law not to be retaliated against for supporting his client's political opponent.  In light of that authority, Fletcher and Choi could have reasonably (even if mistakenly) concluded that removing Mitchell from her assignment with the Sheriff's Office was a lawful way to reconcile these competing legal principles.  The Court therefore holds that Fletcher and

---

[6]Mitchell points to *Kidwell v. Sybaritic*, 784 N.W.2d 220 (Minn. 2010), for the proposition that Rule 1.16 does not bar in-house lawyers from bringing retaliatory discharge claims against their former employers.  Mitchell is mistaken; *Kidwell* specifically declined to resolve whether attorneys are categorically barred from bringing such claims because it found that the plaintiff had not engaged in protected conduct.  *Id.* at 226, 231.

Choi are entitled to qualified immunity on Mitchell's First Amendment claims against them in their individual capacities.

### C. Official Capacity Claim Against Fletcher

Defendants also move to dismiss Mitchell's First Amendment claim against Fletcher in his official capacity.  Defendants argue that Fletcher's actions cannot plausibly be imputed to the County because he did not have the authority to remove Mitchell from her assignment with the Sheriff's Office.  This argument is in tension with defendants' qualified-immunity argument, which relies heavily on the fact that, under Rule 1.16, Fletcher has the right "to discharge his lawyer at any time and for any reason."  ECF No. 29 at 16.  At oral argument, defendants walked back this assertion somewhat, contending that Fletcher merely has the right to *request* another attorney, and Choi has the authority to decide whether to grant such a request.  Hr'g Tr. 14.  The Court believes that this issue is better addressed after the development of a full record concerning the manner in which the RCAO handles an agency's request for a different attorney.  Defendants' motion to dismiss this claim is therefore denied.

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.      Defendants' motion to dismiss and strike [ECF No. 15] is GRANTED IN

        PART and DENIED IN PART.

2.      The motion to dismiss is GRANTED with respect to plaintiff's First

        Amendment claims against defendants John Choi and Robert Fletcher in

        their individual capacities, and those claims are DISMISSED WITH

        PREJUDICE AND ON THE MERITS.

3.      The motion to strike is GRANTED to the extent that the Court directed

        plaintiff to file a redacted version of her amended complaint and file the

        original version under seal.

4.      The motion is DENIED in all other respects.


Dated:  December 2, 2021                     s/Patrick J. Schiltz
                                             Patrick J. Schiltz
                                             United States District Judge